The one case on our calendar for oral argument, we will proceed to hear now. That is number 21-601 Francois v. New York City Department of Education. Mr. Glass. Good morning. May it please the court, my name is Brian Glass. Mr. Glass, let me just interrupt for a second. Are you appearing solely by audio? I don't have visual. I'm sorry, I thought I was on video. Very good. Okay, may it please the court, my name is Brian Glass. I represent Eugenie Francois. Ms. Francois is now a retired teacher who worked at Midwood High School for the Department of Education for many years and retired in June of 2017. She felt forced out after a pattern of perceived abuse based on age discrimination in June of 2017. After she retired, she discovered in October of 2017 that the principal had given her an ineffective rating on her final year and that decision has consequences as far as potentially coming back to the Board of Education, doing procession or substitute teaching after retirement. The process in New York City is that you have to challenge that decision through the appeal process in order to appeal it further. And for state court review, the state courts will not even entertain an appeal of an ineffective rating until you exhaust that process. So that's what she did. And sometime, I believe it was in May of 2018, it was sustained, essentially. So at that point, she started litigation and she had started Article 78 proceeding challenging that. And at the same time, she also filed an EEOC charge claiming that this action was, you know, motivated by age discrimination. So the relevant issue in the under Title VII for her to pursue this claim. And so when she took the EEOC charge and turned it into a federal lawsuit after she got a right to sue letter from the EEOC, the city moved to dismiss the case. And the question became, the judge really didn't, the judge below the district court really only addressed the issue about when the 300-day statute limitation starts. And the relevant issue is whether the appeal rating affirmance is the relevant action or whether it was back in October 2017, when she discovered it. Now, we bring this appeal to try to clarify. Let me just ask though, I mean, she learned she got the inefficient rating on October 11, 2017, correct? Yes. And that is outside the 300-day period, counting back from when she filed her EEOC complaint on October 14, 2018, correct? That's when she discovered that she had received an ineffective rating. But for purposes of appeal in the state courts, you cannot appeal that rating independently. I know, but she's trying to pursue a federal action under Title VII, correct? Yes, yes. And that's where Delaware and Ricks speaks to her circumstance. And it seems to me that the state exhaustion requirements have to do with her pursuing state causes of action, maybe her Article 78 proceeding, what have you, but not Title VII. Why am I wrong in thinking that? Well, there is some case law we acknowledge to that effect, but they haven't really decided the issue of whether an ineffective rating sustained by the Board of Education would be an independent act of discrimination. And there is no cases that really decide that particular issue. Once again, though, Rick says that it's the action, the discriminatory action, and not the consequences and subsequent review, potentially, that is the actionable item that triggers the running of the statute of limitations. And it's not the later consequences of that allegedly discriminatory actions, like the denial of the review, that we consider for purposes of assessing Title VII timeliness. So again, regardless of what the state requires for review, for Title VII purposes, it seems to me that even when she learned she got the that the process, the fact that review had to happen later to pursue a state claim is irrelevant to the timeliness of her Title VII claim. Why am I wrong in thinking that? Well, I think Rick talks about this case-by-case basis, and it wasn't the appeal of an ineffective rating. It was in the process of a grievance process that had nothing to do with the Board of Education. It was an independent process of appealing, like pursuing a grievance process. The administrative process in New York City is a little different. The chancellor is adopting, is basically making the decision that's having the consequence to not return to the DOE, and the Ricks did not have that kind of scheme. And also, we cited in our brief, in the reply brief, a case out of Maryland, which sort of rejected the Ricks policy. And there's a good quote in the case about the confusion to these teachers in these situations where they're told, you know, on the one hand, they have to exhaust their administrative remedies that you could go to court to challenge the Article 78. So, for example, she did raise some claim of discrimination in the Article 78 proceeding. She could not have raised that until she got to that point of the- But once again, that has to do with her state law remedies, not her federal law remedies. And actually, could you speak to it? I think your brief said that the Article 78 was still pending. What is the status of the state, her state complaint? It appears in December 2020, it was affirmed that she has a motion for leave to appeal pending at this point. It's still open. But, you know, again, I think- Actually, Mr. Glass, I had a question about something you just said, which is that disagreement by a lower court with Ricks. Ricks is the Supreme Court. So, what were you referring to? Well, it says in Ricks that, you know, that there should be a case-by-case- Ricks is the rules to be applied on a case-by-case basis. And I'm saying that, you know, Ricks was not the same factual predicate as this case with an ineffective appeal that involved a New York City teacher. No, but you both involve basically an argument that there's a tolling when one is pursuing other remedies, and Ricks rejects that, right? Yes, but I think in the context of the city teachers, you're talking about the chancellor is still part of the system. I think there, there was a grievance process. So, it's our argument that the chancellor's decision is sort of the final decision that's having the economic consequences, the adverse consequences to the teacher. And that is required under the scheme. But, Mr. Glass, I also, I'm not sure it's exactly accurate to say that the Barnes case that you rejected, Ricks, there it was looking at an allegedly discriminatory act in the refusal to reinstate in a different scheme rather than the sequence of exhaustion that there had been an application specific for reinstatement and the process that, that decision declining to reinstate was not seen as simply a consequence. It was an actual discreet discriminatory act. So, because of course, as Judge Sullivan's pointing out, the district of Maryland is not entitled to reject the Ricks holding. Yeah, but I think, I don't think it was rejecting it. It was, it was, you know, it was interpretation or distinguishing of Ricks. And so I think here you could argue that the ineffective rating itself, which is the act again, because she could not proceed in the state court scheme until, and she could even allege discrimination that that act was discriminatory in state court until such time that she exhausted that appeal process. So, you know, we would ask the court to consider, you know, that, try to create as, as, as, as the Maryland court, there would be a lack of duplicity of claims and staleness. It would be logical that the point to appeal would be at the point that you, that the remedy, you know, that the, that appeal decision is rendered by the chancellor's office. All right. Thank you. Yeah. You've reserved three minutes of rebuttal. We'll hear from the city. Good morning. May it please the court Mackenzie fellow for the city. This court should affirm because the district court correctly found that the EOC charge was untimely. It was filed more than 300 days after she resigned and more than 300 days after she got her final evaluation. As this court's questioning makes clear, Rick's is not up for debate. I mean, the, filing of the grievance or the, at the request for reconsideration simply does not restart. The does not toll the passing of the time and it does not read the decision does not restart the clock. Even if Rick's could somehow be interpreted that way, this case would still be precluded by the fact that she already challenged in state court, the decision that she's trying to challenge here to the extent that she's now claiming it's the, the appeal decision that was discriminatory. That's what she was challenging in state court. And she said it violated the city human rights law because it was age discrimination and the state courts rejected that. And while the plaintiff claims in his reply brief that we didn't raise this blow, that is wrong. We raised it in both our motion below and our reply. It's at pages 82 through 84 of the record and page 117 through 119 of the record. And even if you put aside the preclusion, the plaintiff still has the problem that a negative performance evaluation is not an adverse action under the law for the purposes of age discrimination. This is not a title seven case. This is an ADEA case. I would also point out and an adverse performance evaluation is not sufficient to base an age discrimination complaint on it. And if the evaluation itself is insufficient, then certainly a later decision to just uphold it and not reverse that decision also is not an adverse employment decision. Nothing in the record to suggest that, uh, that there was an attempt to be reinstated or to do substitute teaching or anything like that, right? No. And in fact, her complaint, I would also point out her complaint doesn't even allege that this subsequent decision was the discriminatory act that she mentions in passing a hearing on that appeal, but she does not say that she does not mention the decision. She does not identify the date of the decision. She does not challenge the decision itself. What she's challenging is getting her evaluation on October 11th. That is what she's challenging in her complaint. And even if you were going to be super nice and let her it would be futile because she can't, she just can't do it because of preclusion. And because the fact that the performance evaluation itself is not an adverse employment action, this plaintiff cannot win three ways to Sunday. She has no claim here. Oh, does the record, uh, suggest any reason for the, um, delay until October 11th and her getting an effective rating for the year? She was supposed to get it. I think before in the, at the end of the previous school year, but she went out sick and didn't come back and then she resigned and it was summertime. So I think there was a delay over the summer. She, because she resigned, she didn't have access to the email system. They, I think they sent it to her earlier by email, but because she resigned, she didn't get it. I would also point out something that my of, to appeal or for leave to re-argue is still pending in state court. That is not correct. It was decided, uh, on April 27th of this year, there is nothing pending in state court. Everything is final. Her case, her age discrimination case was dismissed on the merits in state court. She does not get a do over in federal court. If the court has no questions, I'll rest on our briefs. Thanks. Thank you very much. Mr. Glass, you have reserved three minutes of rebuttal. Yeah, just a couple of points. Uh, the reason she was not told about the decision, they could have nailed her decision. The reason she went into the school because she was not given the decision. They made no attempt to give her the appeal decision. That's why October 11th was the date, because she was wondering where it was. The school amply could have given it to her. She went into the school and found out that it had been issued. So that's not her fault at any point. This argument that there was the negative employment action, there's an automatic consequence. The court counsel is confusing the idea of a negative performance evaluation versus an annual rating. This was an annual ineffective rating that has absolute automatic consequences to coming back to the DOE. But she has it, but there's no allegation that she's attempted to get back to the DOE or is any interest in getting back? Because there's no, there's no, there's no way to do it because that, that ineffective rating attached, those consequences attached. And there are cases, there is case law in the district courts about that, that have recognized that to be an independent adverse action. So there's no question. Let me ask, let me interrupt this for a second. So you mean, despite her retirement, she would be able to undo her retirement and come back in some capacity if it weren't for that ineffective annual ineffective rating? Is that right? They use that ineffective rating to attach the negative consequences that automatically attach and it would be fruitless. So I understand Judge Sullivan's point, but the issue is whether it would be fruitless to do so, futile because there's ample, you know, if you get an ineffective rating, it's precluding you, it has consequences attached to that. So I really think the only issue in the appeal really is whether that action, you know, is from October 11th or it's from the time that she exhausts her process. And it's a mandatory process, unlike some of these other processes like RICS. But again, why doesn't RICS, even if it's a mandatory process for a state claim, RICS says that we look to the decision, not to the subsequent process for the federal claim. So what distinguishes this from RICS? Well, for discrete acts and independent, this could be an independent act, the chancellor's decision on this to, to, you know, create, to have that in effect permanently on the person's record could be an independent act in itself. That wasn't alleged, that wasn't alleged that he was discriminatory in making that decision, was it? Who was not discriminatory? The chancellor, the chancellor. Well, he's adopting the principle as part of the, he's a defendant in the lawsuit to the extent that, you know, he's named in the Department of Education is alleged to be discriminatory for EEOC purposes. It's, you know, you can't sue the individual in Title VII anyway, it's the Department of Education that's adopting, is doing the discriminatory act. And that is part of the discriminatory act itself, the, that the, you know, that, that the chancellor's decision, you know, it's not some outside arbitrator or review processes. So the chancellor himself is, is, if that's a discriminatory act in itself, we would argue that's an independent act that should be allowed to be pursued. And to the extent that there are pleading issues or wasn't clear what certain dates were, I believe she was given no chance to amend, she was pro se. So I think she should have an opportunity at least to clarify some of those issues that the court is raising. What about Ms. Fillo's point that there's nothing pending in the state court? There seems to be a pretty stark disagreement between the two of you. And she's saying it all ended in April. So what, what's the story there? Yeah, I was, I actually was not aware. I, my understanding was a motion for leave to appeal filed. I don't believe it was fully briefed. It's possible it was rejected. I apologize. I wasn't aware of that. And I knew that the, I knew that the appeal had been denied in December of 2020. But also you got to remember, we're not dealing with the state court issue. We're dealing with or a federal claim here. So I don't think the state court is particularly relevant here. It's not part, it wasn't part of the judge's decision below about whether preclusive arguments apply. And I think there are arguments against that. This is not really before the court. The art, the point is really what is the timeliness of the action. So they're trying to go into other reasons, trying to say that's why a big part of their argument is there's no adverse employment action. I think that's very easily refuted. There may be some issues of collateral estoppel, but that's really what was just, she had thrown in an article 70 of the city law claim does that preclude an EEOC claim of age discrimination, which the state court didn't address. So that's, I think that's a different argument, but I do think she should be given leave to replete to try to argue that this, this action that happened on May 14th, 2018, was an independent act of discrimination, a discreet act that should be able to be pursued. I'm not saying this is an easy case to pursue, but it's premature to dismiss it at the first instance, when she has filed the steps that are required to get there. Thank you very much. We have your papers and we'll review them. We'll take the matter on submission. This concludes our oral arguments for this morning. The clerk will please adjourn court. Thank you. First tense adjourned. Thank you, judges. I'll pass. Thank you. Thank you.